Appellant Harold W. Dickens III appearing pro se, J. Patrick Fleming, Jr. appearing for appellees. All right, good morning, Mr. Dickens. Would you like to reserve some time for rebuttal? Good morning, Your Honor. Yes, I would. I would like to reserve ten minutes. Ten minutes. Okay, very good.   I am aware that the Court has rejected your request for rebuttal. The Court has read the briefs, and I want to clarify some things to begin with. I know that in reading the record, there can be a lot of perceptions, or you have to look at what you see there and make certain determinations. Well, you're judges, so you have to judge things. But I just want to encourage the Court to try to look sometimes past the way that the record is presented by perhaps very clever and skilled attorneys and to try to look to see what really the core issues are. I know that's what your job is to do. And I just want to set the stage to say that from the very beginning, this is set up to seem as though or to look as though the doctor who is the subject of the slap motions, who won the slap sanctions, is a very big victim in this scenario. And he's been treated very badly. False declarations were filed. Let me stop you there because we're really not concerned with whether the doctor is or isn't the victim. That's not what really is at issue here. I'm not prepared to make a finding one way or the other on that. The question is what you did. And the declarations that were filed were false, weren't they? Well, thank you, Your Honor. And that's what I want to address. I think that a lot of this case is turning on, as I was saying, these perceptions and semantics because there's a difference between a fraudulent and a willfully malicious lie and something that is a mistake. Both of those things can be deemed to be false. So just going directly to your point, to clarify that, there was never a declaration that I signed that was false. And I just wanted to clarify that. I don't know if the court is fully aware of that. It was the client's declaration. We understand that. Yes, and the client signed a declaration. And there's never been presented one shred of evidence that suggests that I would know or should know or that I did know that that declaration was false, yet. Well, you must have known that you didn't meet with these clients before they posted the Yelp reviews, right? Yes, of course, Your Honor. But again, I'm not sure. But did they have another attorney at that point when they did that? Well, obviously, if I know that it wasn't me, then, of course, if they're saying they had an attorney or they talked to an attorney at some point before that time, it would have been another attorney. I never asserted that it was me. The fact that that's even mentioned in the brief is really, Your Honor, a red herring. The client said she had an attorney. It was just that simple. If she didn't have an attorney, one, that's a mistake that she corrected voluntarily later. The whole brief, the whole tenor of this claim or this case doesn't really understand the issue or see that Ms. Stefani made a simple mistake that wasn't about the gravamonte of the case. Again, I'm not trying to smear her. The case was about sexual assault in a doctor's office, not about when she got an attorney. Let me ask you about that question, too, slightly differently, because you had an anti-SLAPP motion. For purposes of the anti-SLAPP statute, did it matter whether she had an attorney or not when she posted that Yelp review? Thank you, Your Honor. Yes, of course it mattered. It would have made our case ten times stronger. But I must say it wasn't terminal to the claim either for the SLAPP motion or for the litigation privilege, which is something that's claimed in the other brief. I guess that's what I'm driving at. I think you did have to show that she had consulted with counsel before she posted the Yelp review. But did you have to make that showing at all for purposes of the anti-SLAPP motion? My understanding is no, Your Honor. All she had to do was be in contemplation of litigation. The fact that she spoke to a lawyer would have been conclusive proof that he would have been unable to dispute based on case law that says when a person consults with an attorney, then it is ipso facto, if I could say, that they were contemplating litigation. However, the fact that she made a Yelp posting and the fact that she accused him of sexual assault in the posting, in and of itself could have been her testimony herself could say, I was thinking about litigation. Yes, again, this highlights your question, the fact that this fact that is made so big, which wasn't a lie, was a mistake. And even if it was a lie, it wasn't a lie that I told. I had a privilege to believe my client, and I did. And notwithstanding that error, the SLAPP motion was not only valid on the one prong of public concern, but also for the litigation privilege, notwithstanding and whether or not she had contacted me or any other lawyer at the time that she made those posts, Your Honor. And that's, I think, really the critical issue. Wasn't that decided below, if I can? And part of this is what we are bound by. And I think you alluded to that. And the court and the sanctions motion essentially found that that wasn't the case. That it was clear that the declarations submitted by defendants, which were drafted by counsel, were false in bad faith and solely intended to implicate the litigation privilege, despite the fact that the privilege was not available to defendants. That's what the court based its sanctions on. And that's what we're kind of stuck with here, isn't it? Thank you, Your Honor. I don't believe so. Number one, a motion hearing is not the kind of hearing that is contemplated under the non-dischargeability trial. This is a judge making statements which they are free to make. They're either statements or they're findings. That's a big difference. I mean, if they're findings and they were necessary, which it seems to, because they are the basis for which you found sanctions were available under the anti-SLAPP statute, if those are findings, that's the preclusion aspect. Well, Your Honor, I think there are a couple of issues with that. Number one, when the court makes findings of, say, bad faith or saying the declarations were false, some of that is, number one, ambiguous as to whether I filed a declaration that turned out to be false or whether I knowingly filed something that I knew was false. The judge never said those exact words. One, that could be interpreted differently. But two, the main issue here is that even if we have to accept those findings, which I don't concede that that's what that is, because that's just something that was said in an opinion that wasn't necessary to come to that conclusion, but that's not the same standard that would have happened in a non-dischargeability trial in the bankruptcy court. I would have had an opportunity. I would have known that I needed to get on the stand and explain that, hey, wait a minute. I didn't do this. I only did my job. I'm just a lawyer trying to do his job to the best of his ability. I never felt the need to do that at a tournament. That's an important point. Can you develop that? Because I think that's what's troubling me is it seems like that you had that opportunity, especially in response to the sanctions motion, and that evidence was not presented. Well, Your Honor, I apologize. I don't have the excerpts completely off book, so to speak. But there was a lengthy dialogue with the court officer, Judge Rice. And he even in that transcript acknowledges that he understood that I explained to him that it could have been a mistake, that not only from my perspective, that my client was mistaken. She just made a mistake. That's it. Counsel has very adeptly and cleverly made this mistake, make it seem like not only is she a liar, but that I'm a liar and a fraudster and I've done willful and malicious injury. I beg the court to see that a common-sense analysis of what happened is completely opposite to the way the picture that is being presented. It was a simple mistake. And it was a mistake that wasn't even relevant to the gravamen of the claims of sexual assault. It was a side issue. It was essential to the anti-SLAPP, though, because it goes to the second prong of that test. Is there some minimal showing of merit? And I understand the argument was there could be none because this was privileged by the litigation privilege. Thank you. Your Honor is correct that had we proved that point that was turned out to be a mistake, then it would have been devastating to the other side. But it is not the case. It's count. It's a reasoning error to say that because we didn't have that, that somehow the whole claim failed. No, the court still could have looked into the facts of that case. And without the mentioning of the fact of when she spoke to her lawyer about it, it had nothing to do with the sexual assault. A court could say that when you speak out on a Yelp posting about two women, about a doctor that assaulted you, and then you're sued to bring those postings down, and the postings come down and you maintain the lawsuit against two indigent women, that that is strategic on its face. Not only because it was an issue of public concern, because there were two claims that were brought for the slap, not only the litigation privilege. So, Your Honor, I say get rid of the litigation privilege. I don't concede that. But even if you do, there was another whole claim that the issue was one of public concern, i.e., women being assaulted by doctors in their doctor's office, that gave rise to a good faith anti-slap motion to a lawyer, Your Honor, who was just out of practice for three years or four years. The judge himself acknowledged, as I said to him, can't reasonable minds differ on what exactly constitutes a strategic lawsuit? I made a mistake. I just want to point out to you, you have about five minutes left. If you want to reserve, if you want to keep going, go ahead. It's up to you. Oh, I thought that I should answer the court's question. But, of course, I would want as much time as possible to rebut. Okay. All right. Okay. Mr. Fleming, back to you. Over to you. I think you're muted. I'm sorry. I said that would happen, and I'm the first one. I swore it wouldn't be me. Anyway, Your Honor, I'd like to address some of the points that counsel has made. And, of course, any questions that you may have. First of all, I think it's very significant. Counsel is now trying to argue what he should have argued long ago and didn't bother to argue to the court, the trial court. In other words, he didn't file any declarations. In response to either the anti-slap motion, opposition that we had filed, or to the attorney's fees motion that we had filed, saying, oh, this was a terrible mistake. Instead, what he did was he stood up in front of the court and tried to turn his argument into evidence. And the court properly said, basically, in the end, that's not evidence. You can argue whatever you want in front of me. Where's your declaration? There's no evidence. Let me ask you this. One of the elements of a 523A6 claim is you have to show either that he actually intended to injure or that he subjectively knew that his conduct was substantially certain to cause injury. And where did the superior court make a finding on either of those points? And if it did, was that finding necessary to decide the issues before the superior court? Your Honor, those issues that you're raising are unique to this particular provision of the bankruptcy code. And obviously, the court didn't have that in front of him at the time. Instead, what he had was the anti-slap statute and the anti-slap law, which, in and of itself, to make a finding of this sort, to impose sanctions on counsel, the courts required to determine that this was a frivolous motion without any basis and therefore crossed the line. That isn't sufficient for willfulness. Well, I think it is, Your Honor. Why? I cited case law to the court that you can look to the circumstances of the situation and that the courts do look to circumstances to determine willfulness. That's fine at trial. But you're not going to trial. You're asking us to preclude that. Well, I'm saying, Your Honor, that the findings of this trial court are essentially a collateral estoppel, that this trial court made a determination that there had been false declarations drafted by this attorney, filed by this attorney, knowing that they were false. Unique to this situation is the representation that there had been counsel advising that their counsel Where is the finding that counsel knew that they were false? I'll just read you some language here from ERO 232. This is the court's tentative ruling, which became its final ruling, where he said, The disingenuous nature of the declarations was revealed during discovery. No reasonable attorney would have submitted declarations which were knowingly false. That sounds a lot like negligence. No reasonable attorney would have done something. I'll go one step further, Your Honor. The next line is, The attorney clearly would have had information as to his first contact with defendants, which, according to defendants themselves, were not before the Yelp post. That's right. Counsel is saying that that's true as to him, but it doesn't preclude the universe possibility there were other attorneys. And maybe he was negligent. Maybe it was gross negligence not to follow up. He can make all these arguments now, Your Honor, but that's not what he did at trial. And that's not what he did in the motion. But why was that necessary? I mean, why was it necessary at that time to go that far? Because this anti-slap motion sought sanctions not just against his clients, but also against him personally. Right. I understand that. And so if—I'm sorry, Your Honor. I understand that, and I understand you are making a very logical extension that this covered the universe. It should have been brought up then, but it wasn't. There was no—on your side, there was nothing to establish that that was the case, that this refers to an attorney, that is, Mr. Dickens. It's laying all over the decision, but it is not expressly found, nor was it necessary to be found. We do have testimony from these two women, both of them. By the way, there were two of them who submitted identical declarations to this effect. To the effect that they did not meet with an attorney, and they did it after the Yelp review. But where is the statement that the witness never told Mr. Dickens that they had never met with any attorney? I don't think there is a statement to that effect, Your Honor, but I think the converse is also true. Where is the statement in the record anywhere that Mr. Dickens, knowing that he's on the line here for sanctions, gets a declaration from his clients and submits it to the trial court, or even to the bankruptcy court, basically saying, oh, terrible thing, I made a terrible mistake. He didn't submit any declarations himself to protect himself in this situation because he knew what the truth was, which was the truth was that he had deliberately drafted these declarations to mislead the trial court into thinking that there had been some kind of counsel involved at the time that these postings were made. And he knew there wasn't. And that's why this was submitted the way it was.  It was that the trial court saw that and understood that and reached that conclusion. Why did it use all the language regarding a reasonable attorney then? If it was so crystal clear that Mr. Dickens intended and this was intentional, why isn't there stronger language about intent by Mr. Dickens? A reasonable attorney is a term that's used in the anti-SLAPP law, where basically they say no reasonable attorney would have filed this motion, and therefore sanctions should be imposed. And that's what that reasonable attorney language is all about. The courts view that no reasonable attorney, namely Mr. Dickens, would have filed this motion, knowing that the statements in it were false, and representing to the court that there had been counsel at the time. Now he's saying, oh, it was a terrible mistake. There are lots of people I can blame for it. You know, if you're going to represent to the court that there were counsel involved at the time of the filing, you should know that. And if you know that, then you should file a declaration with the judge to clear it up if that's really the situation. But that's not the situation. This is all argument by Mr. Dickens without any kind of evidence submitted to the court that made the determination. Let me ask you this. There are two lines of defense here. There was the anti-SLAPP lines of defense and the litigation privilege defense. I can understand how the involvement of counsel when the posts were made was important for the litigation privilege defense. How did it matter with regard to the anti-SLAPP defense? Why is the involvement of counsel even relevant for anti-SLAPP purposes? What counsel was trying to say, I think I understand your question, Your Honor. I want to be sure. What counsel was trying to say was there's a litigation privilege here, and we therefore have absolute protection in this situation because my clients filed these Yelp postings in a context where the attorney was advising them, essentially. And if that had been true, as the court itself pointed out in its ruling down below, the trial court, then we probably would have lost that motion. But couldn't he also prevail on an anti-SLAPP motion even if no attorney was involved when the posting was made? The trial court basically found that there was strong evidence that we presented that we disputed the allegations that were set forth. I guess I'm asking a more abstract question about the law. Just looking at the anti-SLAPP statute, does it matter whether the party who made the statement was represented by counsel when the statement was made under the anti-SLAPP statute alone, putting aside litigation privilege? I think it matters to the extent that you're going to try to argue that I prevail because I've got counsel advising me. I'm using the litigation privilege. If a party had made that representation without the attorney present and they were contemplating litigation, let's say, that would be a closer call, a different set of issues. But what nails it is the misleading attempt here to suggest that there was counsel involved at the time. And so that's what we were able to establish and show to the trial court and also to the bankruptcy judge, that these findings of the trial court down below are particularly significant because the judge saw through this effort that had been made to try to mislead him. And it's not often that you get anti-SLAPP sanctions imposed against a party who's bringing an anti-SLAPP motion. It's a high standard. And we were able to meet that standard through the depositions that we were able to take. And as the trial court pointed out, if we had not taken the depositions, the court would have been left with the impression, the wrong impression, the false impression created by Mr. Dickens in these declarations that he drafted that counsel was present at the time. And that's just, that's a complete falsehood. The falsehood has to be intentional. That's the whole point in front of us. I think there you, the language that the court used made it very clear. Mr. Dickens drafted these declarations. He's calling his clients indigents. He's suggesting they really don't understand the law, which they don't. They're relying on him. But he's drafted these declarations in a manner that's designed to create a misimpression with the court that somehow an attorney was involved. And they say, my attorney. My attorney. That's Mr. Dickens. And so the trial court saw through this. And I hope, you know, that you do too. I think what we're driving at here is that, I think, based on what I see in the record, if I were sitting on an appeal from the sanctions order, I'd have no difficulty affirming. You know, just no difficulty. This conduct fell so far below any standard that sanctions seem to be perfectly warranted. But there's a separate question here, and that is 523A6. And we're wondering whether the sanctions award itself establishes all the elements that are necessary to make it non-dischargeable under 523A6. I did my best to address that in my briefs, Your Honor. I know you've read it. I think that In re Sue gives you some grounds to look to where it says, basically, the court can consider circumstantial evidence that tends to establish the debtor actually knew. I think that's clearly what the trial court found. That's the collateral establishment aspect of this. When you look to the other element, the malicious element, there you're talking about, again, you've got to look to the overall circumstances here. What was the malicious purpose? The malicious purpose is very obvious. Knock out my client's case and get sanctions against my client in a circumstance where there's a falsehood that is the basis for that. And that's as malicious as it gets, if you ask me. I mean, if I'm going to mislead a court and present the court with false evidence, and then I'm going to... I think Mr. Dickens' point is you can mislead, but as you know, there's negligent misrepresentation and intentional misrepresentation. You can, except from discharge, the intentional misrepresentation, you do not get to exempt the negligent misrepresentation. So there's a falsehood, and I think Judge Ferris is right. We agree there's a falsehood, no doubt. But was it intentional? Again, all I can say to the court is when you look at the overall circumstances here, and you ask yourself, number one, what did this trial court conclude? That's the basis for collateral estoppel. And then you ask yourself, if what Mr. Dickens is trying to suggest to the court is true, why didn't he come into court and say that to the trial court? At that important stage of the proceeding, twice, not only that, but he never even barred to appeal the orders. This is evidence to me that Mr. Dickens didn't want to present the evidence, didn't have the evidence at that time. He certainly didn't have his client's declaration to come in and file them in opposition to say, oh, we made a terrible mistake, there was these other attorneys involved. Very simple way to knock us out. But he didn't do that because he obviously couldn't get his client's declarations. And because those declarations that he had originally submitted clearly were referring to him, my attorney. And so what I say to the court is you don't have to have a point-blank finding that there's been a malicious action in the context of a bankruptcy law. You can look to the overall circumstances and see for yourself that this is very obvious what the attempt was being made to do. And no effort was made to defend it down below. And why is it happening here? Because he's hoping to get rid of the entire sanction by way of bankruptcy. And, you know, it seems that's an entirely ‑‑ I understand there are different rules at this court, but I also think you can look to the record and you can find more than sufficient evidence to support finding that there's a ‑‑ it's not a destructive event. And I think Zealous gives you an opportunity, by the way, this Zealous case to also look. Thank you. Okay. Thank you. Thank you very much. All right. Mr. Dickens, you have, I think, about five minutes. Let's see. Yeah, a little under five minutes. So please go ahead. Thank you, Your Honor. I want to clarify one thing, and this may be a semantic issue, but we never even tried to mislead the court. That's actually not true. By the time the court saw the papers, the court knew everything. We submitted a declaration that did have something that turned out later to be mistaken. Call it false if you like. Mr. Fleming is trying to make it seem like there was a Perry Mason moment here. No. If I wanted to advise my client to lie about having an attorney, it would have been just as simple to do it on a declaration as in a deposition. There is a declaration on record, even though it was not, I think, filed at the time, which my client explains that of her own volition, without even having to be deposed, that that thing was an error. We drafted the declaration. They signed it. My clients are so honest that when they read it in prep for the deposition, they said, hey, wait, this isn't true. And what did I do? I said, come clean. And that's why, Your Honor, there's two things that counsel is ignoring. When I came to the, mind you, I'd only been out a few years at the time, maybe three or four years. I thought that by having come clean and herself acknowledging her mistake and knowing that it had nothing to do with an anti-slap, because if I'm a decent lawyer, I would have withdrawn the anti-slap once that came out to protect myself. But the fact is that the anti-slap motion was still valid. And the fact that the court found that it was not was colored by the way that this misrepresentation was spun cleverly and adeptly by counsel. But the court was never, ever deceived about what happened, because by the time the court. Well, let me ask you this. You didn't withdraw the anti-slap motion. Did you withdraw the litigation privilege argument? I did not, because, again, that's a great thank you, Your Honor, because the litigation privilege still applied. The fact that they consulted with counsel before or not was simply probative. It wasn't conclusive. They could still have a litigation privilege if they contemplated litigation. The fact of them consulting a lawyer would have been, if you'll excuse the expression, the nail in the coffin. And I understand why counsel is upset. Oh, they they would have almost had us there. But because we didn't have them, didn't mean that that the slap motion was invalid, as the court obviously knows. And it also did not mean that the litigation privilege did not apply. The court still could have found in our favor on both. But, again, I want to reiterate, there was never any deception to the court. And the fact that the court found that is actually, I think, revealing, as I was saying from the beginning, everything that the court is seeing is the opposite of reality. My client lost the case, yes. She's said to be a liar about both of them, about the sexual assault. She's said to be a liar about when she found her attorney. But the fact is, my client was honest from the beginning and all the way through. And that's the only reason why she doesn't have a sanctions judgment against Bradley. Counsel acknowledged here and he acknowledged at the hearing that all she had to say was, I talked to a lawyer and I don't remember who, and they would have lost. And her counsel did not advise either her or her co-defendant to do that. When I found out that there was a mistake, not a lie, a mistake, that maybe was my fault. Maybe I got a little eager and was like, oh, you talked to a lawyer. Who knows what happened? But the fact is that she of her own volition said, no, I did not speak to a lawyer. She told the truth. She told the truth about the assault. She told the truth about the lawyer. Counsel, let me ask you a question. So in the typical litigation situation, you prepare the declaration and you go over the declaration and its elements with your client before she signs it so that you can make sure that she understands what it is she's saying, that you've prepared because she's not drafting this, you are. Your defense here is you consulted with someone. So the reason why we're concerned here about the intentional versus the potentially negligent act is, you drafted it. Did you ask her? Who was the lawyer? Who did you meet with? When did you meet with them? I have to verify because you're signing a document I prepared. You're saying under oath, this is true. Why isn't that not intentional action when you don't investigate, you don't ask her, you presume she had a lawyer, you suggest to her this is what the story is going to be. You have her sign something that she later says is inaccurate. Wasn't that your duty to do that before you did it? And why didn't you, since you relied on that as the basis for your motion, that's what you decided to do. You could have said the litigation privilege is applicable irrespective of whether they do or don't have an attorney, but you moved on this basis. So that's where I get concerned. So maybe you can help me with that. Thank you, Your Honor. And I think that the point that you're making highlights what's the primary issue here, is I never had an opportunity to explain exactly those things, and I never thought I needed to. One thing, and I'm not going to say this to try to get sympathy because I've learned that that's not what happens in courts, but this is something that counsel knows and which he is glossing over, which is at the time of Stefani's deposition, I was wearing an ostomy because I just had about 52 centimeters of my colon cut out and I still stayed with my client. I had been diagnosed during that proceeding with Crohn's disease and was in the hospital for up to three months. Counsel knows this, that the reason that I did not appeal, that the reason there was some sloppy lawyering, that the reason there may have been negligence, he knows this, was because I was almost deathly ill in the hospital for three months. And when I got out, my stomach was outside of my body, and I had to get reconnected. All of this happened, and the court and counsel knew this during the time of these events. And that's the reason that some of my work was sloppy. And it is, in fact, proof, the fact that this was never brought before the court, that I never had an opportunity, because this, as the court was pointing out, this, if there was a trial, you can make circumstantial conclusions, but we never had that. The court denied me the opportunity to explain what happened, not only here, but previously, because there was no reason for me to think that I would have to challenge a completely different standard. Counsel acknowledged that the bankruptcy standard was not before the court. He acknowledged that the reasonable standard was what the court used. Everyone knows what happened here who was there. When you see the papers coming out a little bit later, and also, I want to point out that my client was also, as counsel knows, was deathly ill. She was dealing with sepsis, all kinds of serious mental health issues at the time, and there was a lot that was going on. It was obviously a mistake, and again, people who were there, everyone, including the court, knows that it was a mistake. But... I think you've gone past your time. I'll let you go on for a couple of sentences to wrap up your answer, but you are past your time. So please conclude your answers quickly. Thank you, Your Honors. I just want to point out that, Your Honor, I never lied. I never tried to lie. I was three or four years out trying to do the best that I could do, and it was one thing to be sanctioned into bankruptcy and out of business for trying to represent two women who claimed sexual assault, two of them, the identical assault against a doctor. But now to say that essentially, with collection costs and 10% fees for an indigent lawyer, too, and his client, that I should be in perpetual service to this rich doctor because I tried to defend two women who were probably sexually assaulted by him in his office. It would be a breach of justice. I think now you're repeating things in your brief, and we understand those things, so I will stop you since you're over time. Thank you to both sides for your arguments. The matter is submitted. Thank you, Your Honor. Thank you.
judges: Faris, Spraker, and Gan